## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

|  |  |
|---|---|
| TACORA CAPITAL, LP, <br><br> Plaintiff <br><br> v. <br><br> MINE & RAIL CORPORATION and MINE & RAIL COMPANY PTY LTD, DRAGON TREE CAPITAL PTY LTD, VALIANT RESOURCES LTD, SQUARE RESOURCES, STEPHEN ROUX, VAUGHN WEBER and STAFFAN EVER, <br><br> Defendants. | Civil Case No. <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Tacora Capital, LP, by and through its attorneys, Nagel Rice LLP, makes the following allegations and brings the following claims against Defendants Mine & Rail Corporation, Mine & Rail Company Pty Ltd., Dragon Tree Capital Pty Ltd., Valiant Resources Ltd., Square Resources, Stephen Roux, Vaughn Weber and Staffan Ever, based on personal knowledge, information and belief:

### INTRODUCTION

1. This civil action is brought by Tacora Capital, LP against Mine & Rail Corporation and its affiliated entities ("Mine & Rail") and several members of its board of directors for fraudulent misrepresentations and omissions in connection with Tacora's investment in Mine & Rail. Mine & Rail and its directors intentionally hid the company's insolvency from Tacora for months while Tacora funded Mine & Rail, until Mine & Rail finally revealed at the eleventh hour that it had a previously undisclosed $15,000,000 cash shortfall.

1

2.    Tacora seeks compensatory and punitive damages, costs of investigation and suit, interest, attorneys' fees and such other relief as is permitted under applicable law.

**JURISDICTION & VENUE**

3.    This Court has subject matter jurisdiction over Plaintiff's Complaint against Defendants and personal jurisdiction over Defendants.

4.    This court has jurisdiction of this action under 28 U.S.C. § 1332(a)(1) and (2), as this suit is between citizens of different states and between U.S. citizens and citizens of foreign nations, and because the amount in controversy exceeds $75,000.

5.    Personal jurisdiction and venue in this action are predicated on 28 U.S.C. § 1391(b)(2), since Defendants have agents within, or transact their affairs in this District, and the activities of all Defendants giving rise to this action took place in this District.

6.    As alleged herein, Defendants transacted, solicited, and conducted business in the Commonwealth of Kentucky through their officers, employees, agents, and/or representatives, including their negotiations and business dealings related to the attempted purchase of a Kentucky-based coal mining and production company with operations in Kentucky, Clintwood JOD, LLC, and its anticipated merger with Coking Coal, LLC.

7.    Defendants caused tortious injury in this Commonwealth by acts and omissions, as alleged herein.

8.    Additionally, Defendant Mine & Rail Corporation has its principal place of business in Belcher, Pike County, Kentucky. Further, witnesses related to this matter are located within this district.

9.    Defendants are properly joined in this action pursuant to Federal Rule of Civil Procedure 20(a)(2) because the claims against all Defendants arise out of the same transaction,

2

occurrence, or series of transactions or occurrences and there are questions of law and fact common to all Defendants. The claims against all Defendants involve the same alleged fraudulent scheme to induce Plaintiff to invest funds while concealing Defendants' true financial condition.

10.     The foreign Defendants purposefully availed themselves of the privilege of conducting activities within Kentucky, thereby invoking the benefits and protections of its laws, when they operated a business, Mine & Rail Corporation, and participated in face-to-face meetings in Pike County, Kentucky to negotiate the transaction at issue.

11.     The foreign Defendants' contacts with Kentucky were not random, fortuitous, or attenuated, but rather were the result of their deliberate engagement in business activities within the Commonwealth of Kentucky, including multiple in-person negotiations in Kentucky regarding the acquisition of Kentucky-based coal mining operations, including but not limited to an in-person dinner meeting on May 8, 2025

12.     The exercise of personal jurisdiction over the foreign Defendants is reasonable and comports with traditional notions of fair play and substantial justice because the claims in this action arise from and relate to the foreign Defendants' activities in the Commonwealth of Kentucky and their alleged fraudulent scheme that was directed at and caused harm to business interests in the Commonwealth of Kentucky.

13.     There exists, and at all relevant times herein mentioned, there existed, a unity of interest in ownership and management between the defendants, such that any individuality and separateness between them ceased; thus, they are the alter ego of each other, one acting for the other in relation to allegations made herein. As such, they are individually, as well as jointly and severally, liable to the Plaintiff for damages.

14.    The harm suffered by Plaintiff was the direct and proximate result of the acts or omission committed by one or more of the defendants, and through no fault of Plaintiff. There may be uncertainty as to which one or which combination of defendants caused the harm. Defendants have superior knowledge and information about which one, or which combination caused the injuries. Thus, the burden of proof should be upon each defendant to prove that he, she, or it did not cause the harms suffered by the Plaintiff.

## PARTIES AND RELATIONSHIPS

15.    Plaintiff Tacora Capital, LP ("Tacora") is a Delaware limited partnership with a principal place of business of 2505 Pecos Street, Austin, Texas 78703.

16.    Defendant Mine & Rail Corporation ("MRCo USA") is a Delaware corporation with a registered agent and address of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808 and a principal place of business at 15888 Ferrells Creek Road, Belcher, Kentucky 41513. MRCo USA is subject to the personal jurisdiction of this Court because of its principal place of business in the Commonwealth of Kentucky, and because it has agents within, and/or transacts affairs in the Commonwealth of Kentucky, and because Plaintiff's claims arose from acts and omissions committed in this Commonwealth.

17.    Defendant Mine & Rail Company Pty Ltd ("MRCo AU") is an Australian proprietary limited company, with a principal place of business of Level 1, 24 Bank Place, South Melbourne, VIC 3205, Australia.

18.    Defendant Dragon Tree Capital Pty Ltd ("Dragon Tree") is an Australian proprietary limited company, with a principal place of business of Level 1, 24 Bank Place, South Melbourne VIC 3205, Australia.

19.    Defendant Valiant Resources Ltd. ("Valiant") is an Australian public unlisted limited company, with a principal place of business of ACN 154 624 576 Queensland, Australia.

20.     Defendant Square Resources ("Square") is an Australian company with a principal place of business of 12 Creek Street, Brisbane City QLD 4000, Australia.

21.     Defendant Stephen Roux is an executive board member of MRCo US and MRCo AU and is a managing director of Dragon Tree and a principal of Valiant. Mr. Roux is an Australian citizen with an address of Level 1, 24 Bank Place, South Melbourne VIC 3205, Australia. Mr. Roux personally met with Tacora's representatives in Kentucky and made fraudulent representations to Tacora while in Kentucky and at other times.

22.     Defendant Vaughn Weber is the chairman of the board of directors of MRCo US and MRCo AU and is the chairman of the board of Valiant. Mr. Weber is an Australian citizen with an address of ACN 154 624 576 Queensland, Australia.

23.     Defendant Staffan Ever is a non-executive board member of MRCo US and MRCo AU and is the executive chairman of Square Resources. Mr. Ever is an Australian citizen with an address of 12 Creek Street, Brisbane City QLD 4000, Australia. Mr. Ever personally met with Tacora's representatives in Kentucky and made fraudulent representations to Tacora while in Kentucky and at other times.

24.     The foreign Defendants, MRCo AU, Dragon Tree, Valiant, and Square operate as part of a common enterprise or integrated enterprise with Defendant MRCo US, as evidenced by: (1) interrelations of operations between the entities; (2) common management, including overlapping directors and officers; (3) centralized control of business operations; and (4) common ownership and financial control. Specifically, Defendants Roux, Weber, and Ever serve as board members of both MRCo US and MRCo AU, demonstrating the integrated nature of these entities.

25.     As alleged herein, the foreign Defendants actively participated in and had knowledge of the alleged fraudulent scheme that affected Kentucky-based business interests.

These Defendants made material misrepresentations and omissions regarding MRCo's financial condition during negotiations that took place in Kentucky, with the intent that Plaintiff would rely on those misrepresentations to fund MRCo's operations.

26.     Further, the foreign Defendants made telephone solicitations into the Commonwealth of Kentucky in connection with the business transaction at issue.

27.     Service of process on the Australian entities shall occur via the Hague Convention.

## FACTUAL ALLEGATIONS

28.     In April 2025, Tacora began negotiations with Defendant MRCo AU to structure a transaction by which MRCo US would purchase the assets of Coking Coal LLC ("CCL") from Tacora.  Tacora had already commenced preparations to buy CCL's assets out of CCL's Chapter 11 proceedings. Most of those assets, including most of the mining equipment subject to the sale, were and are located in Eolia, Letcher County, Kentucky.

29.     During these negotiations between Tacora and MRCo, Defendants, including Defendants Stephen Roux, Vaughn Weber and Staffan Ever, represented to Tacora that MRCo US and MRCo AU were solvent and financially healthy. These negotiations took place in Belcher, Pike County, Kentucky, with several face-to-face meetings in Pike County, Kentucky between Plaintiffs and Defendants.

30.     In August of 2025, Tacora, directly and through its designee, Cumberland Coal Corporation, consummated the acquisition of substantially all of the assets of CCL through a court-approved bidding and sale process within Coking Coal LLC's Chapter 11 proceedings. (*In re Coking Coal, LLC*, Case No. 24-70529-GRS (Bankr. E.D.K.Y.).

6

31.    Simultaneously, MRCo US was maneuvering to purchase Clintwood JOD, LLC, a Kentucky based coal mining and production company with operations in eastern Kentucky, including Pike County, and southwestern Virginia.

32.    During this period, Defendants represented to Tacora that MRCo US had sufficient capital to close the Clintwood JOD acquisition. Those representations were false when made, and Defendants were forced to get the capital from Tacora to complete the Clintwood JOD deal.

33.    Tacora and the Defendants intended to strategically merge CCL and Clintwood JOD, to mate the mining assets of CCL and the management expertise of Clintwood JOD. The combined venture would reside in Pike County, Kentucky and be owned by MRCo US.

34.    In furtherance of the deal, Tacora invested in MRCo Au via a convertible note, which would convert to MRCo equity upon closing of the Cumberland acquisition by MRCo and Australian Foreign Investment Review Board ("FIRB") approval of Tacora as a foreign equity investor in MRCo.

35.    At various points throughout the Fall of 2025, Tacora funded under the first and second tranches of the convertible note, for a total of $20,000,000.

36.    Throughout this time, Defendants continued to represent that they had significant and valuable banking relationships that they would leverage to support their purchase of CCL.

37.    Defendants further represented that they were actively seeking outside capital throughout this period to support their purchase of CCL.

38.    On September 4, 2025, Tacora, MRCo US and MRCo AU entered into a binding written Agreement to Pursue, which set forth the obligations of the parties as they relate to the initial necessary steps of the joint transaction.

7

39.   The Agreement to Pursue recites that good and valuable consideration has been given and received and that the parties intend to be legally bound by the terms of the Agreement. The Agreement is duly executed by the parties and there is no dispute as to the binding nature of the Agreement.

40.   In early December 2025, Defendants engaged in a short equity road show, which did not result in any outside equity capital.

41.   By December 12, 2025, MRCo AU notified Tacora that it had an "unforeseen" capital shortfall of $7,000,000 and that it needed Tacora to provide that additional capital to ensure that MRCo would be able to ultimately close the transaction.

42.   Tacora relented and, via promissory note, extended the additional $7,000,000 that MRCo requested, with the first $1,500,000 funded on December 12, 2025, a second $3,000,000 funded on December 19, 2025, and a final $2,500,000 funded on January 5, 2026.

43.   On January 23, 2026, Defendants requested that Tacora fund the third tranche of the convertible note for $3,000,000.

44.   In advance of the $7,000,000 loaned under the promissory note and the additional $3,000,000 under the convertible note, Defendants falsely represented that they would provide a senior lien on MRCo to Tacora in exchange for the loans.

45.   Defendants never had the ability to provide a senior lien as promised because of two other outstanding contracts, one of which was with Square. Square, and in particular Square's executive chairman, Staffan Evers, knew that Defendants could not provide a senior lien to Tacora, but offered the security anyway to induce Tacora to extend the foregoing loans.

46.   Defendants deliberately hid their inability to provide a senior lien and the existence of contracts preventing them from being able to provide a senior lien, from Tacora.

47.     Throughout December and January, Defendants had continued to represent that they are engaging in equity fundraising efforts in Australia.  No outside equity materialized.

48.     Finally, on January 29, 2026, MRCo provided material to Tacora ahead of a board meeting that revealed an additional "unforeseen" cash shortfall of $15,000,000.

49.     These rapid and unforeseen capital shortfalls were indicative of MRCo AU's deep financial troubles and of insolvency.

50.     Realizing that Defendants had misrepresented the financial health of MRCo AU, Tacora was unwilling to advance any additional funds to MRCo AU.

51.     The Agreement to Pursue allows for Tacora to terminate the Agreement "if there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by the MRCo Group in this Agreement, . . . in any documents related to the Tacora Funding, in any loan documents, or any other agreements between the MRCo Group, on the one hand, and Tacora or its affiliates, on the other hand."

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment/Fraud by Omission**
**Against All Defendants**

52.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

53.     Plaintiff brings claims for fraudulent concealment / fraudulent omissions by the Defendants.

54.     Each Defendant named herein participated in fraudulently concealing and hiding material information from Tacora during Tacora's negotiation process, diligence process, and during the course of Tacora's venture with Defendants, as stated above.

55.     Applying Kentucky substantive law,[1] "[a] fraud by omission claim is grounded in a duty to disclose … To prevail, a plaintiff must prove: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence."[2]

56.     Defendants had duties to disclose accurate and complete information to Tacora by nature of their confidential, fiduciary, and contractual relationships with Tacora arising from, among other things, the Agreement to Pursue, and duties to not make partial disclosures while creating the impression of full disclosures, as well as statutory duties to disclose.

57.     For example, a duty to disclose arises when one party to a contract has superior knowledge and is relied upon to disclose that information, or when a party makes a partial disclosure, thereby creating a duty to disclose the full truth.[3] Here, Defendants had knowledge of

---

[1]   Pursuant to Section 18 of the Agreement to Pursue, the Agreement is governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

[2]   *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (Also stating that Kentucky recognizes a duty to disclose in four circumstances: 1. A duty arising from a confidential or fiduciary relationship; 2. A duty provided by statute; 3. When a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and 4. Where one party to a contract has superior knowledge and is relied upon to disclose same. *Id*. at 747-48 (internal citations omitted)). The Kentucky elements of a claim for fraudulent omission are similar to those stated in the Restatement 2d of Torts § 557A, and follow the Restatement 2d of Torts § 551, as cited in *Giddings*. *See also, Smith v. General Motors Corp*., 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) (discussing actionable case of fraud based on suppression of a fact).

[3] "The next allegation is 'fraudulent concealment,' although in Kentucky the tort alleged is more commonly known as fraud by omission. It requires proof of four elements: (1) that the defendant had a duty to disclose a material fact, (2) that it failed to disclose the fact in question, (3) that its failure to disclose induced the plaintiff to act, and (4) that the plaintiff [*698] suffered actual damages. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 641 (Ky. Ct. App. 2003) *(citing Smith v. Gen. Motors Corp.,* 979 S.W.2d 127, 129, 45 13 Ky. L. Summary 9 (Ky. Ct. App. 1998))…First, 'where one party to a contract has superior knowledge and is relied upon to disclose same.' *Smith,* 979 S.W.2d at 129. Alternately, a 'partial disclosure by a party in a transaction puts that party under a duty to tell everything once he/she discloses some information on the matter in question.' *Mercy Health Partners-Lourdes, Inc. v. Hastings,* 2006 U.S. Dist. LEXIS 47743, at *11 (W.D. Ky. June 29, 2006) *(citing Dennis v. Thomson,* 240 Ky. 727, 43 S.W.2d 18, 23 (Ky. 1931))." *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 730 F. Supp. 2d 683, 697-98 (W.D. Ky. 2010).

10

the dire financial condition of MRCo AU, and of their inability to raise outside capital. Rather than provide Tacora with honest, full and complete information as they had a duty to do, Defendants actively concealed and omitted information concerning their financial condition, including cash forecasts and projections as well as their unsuccessful roadshow efforts. They made partial disclosures and suppressed material information. And the information omitted was not otherwise accessible to Tacora, or otherwise discoverable through ordinary diligence.

58.     Defendants had affirmative and continuing duties to not fraudulently conceal and/or omit material facts regarding the financial and operational condition of MRCo to Tacora.

59.     Defendants each had knowledge of the true financial and operational condition of MRCo, which included, but is not limited to, ballooning problems with MRCo's cash balance and solvency, and the true results of the failed months-long capital raising efforts that Defendants claimed to be engaged in.

60.     Rather than provide accurate and complete information to Tacora, Defendants deliberately and intentionally provided Tacora with partial information and misleading information.

61.     The information provided to Tacora by email, verbally and through various presentations was material and knowingly false, and the omissions and concealments were made to and did induce Tacora to do business with, and invest substantial funds in, MRCo.

62.     Defendants concealed the true financial and operational condition of MRCo from Tacora to assure that Tacora funded MRCo's operations not for the good of MRCo and not in the interest of completing the contemplated transaction, but in the personal interests of the Defendants.

63.     Defendants each knew that the information being communicated to Tacora was knowingly false, misleading, incomplete and inaccurate. Each Defendant agreed and participated in the fraudulent concealment of material information from Tacora.

11

64. Because all Defendants participated in, ratified, and/or agreed to the misrepresentation of information to, and the concealment of the material terms from, Tacora, all Defendants are liable to Plaintiff for that fraudulent and tortious conduct.

65. In reliance on Defendants' misrepresentations and concealment of critical information, Tacora continued to advance funds to MRCo as described above. Had MRCo's insolvency and true financial circumstances been disclosed, Tacora would not have invested its funds in MRCo.

66. Defendants' conduct was malicious, fraudulent, oppressive, reckless and outrageous toward Plaintiff, and warrants an award of punitive damages.

67. As a direct and proximate result of Defendants' fraud and fraudulent concealment as set forth herein, Plaintiff has been damaged in an undetermined amount not less than $30,000,000.

### SECOND CAUSE OF ACTION
**Negligent Misrepresentation Against All Defendants**

68. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

69. Plaintiff brings this claim for negligent misrepresentation.[4]

70. As described herein, Defendants each individually and in concert with one another negligently provided Tacora with false information and/or negligently failed to disclose to Tacora

---

[4] "Kentucky follows the Restatement (Second) of Torts § 552 in providing a distinct cause of action for negligent misrepresentation: One who, in the course of his business, profession or employment, or in any other [*697] transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 730 F. Supp. 2d 683, 696-97 (W.D. Ky. 2010), citing *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); Restatement (Second) of Torts § 552(1).

the true financial and operational condition of MRCo which included, but is not limited to, insolvency and an inability to raise outside capital and inability to meet projections.

71. Plaintiff reasonably and justifiably relied on Defendants' representations, as stated above, which were made without exercising reasonable care or made with competence in obtaining or communicating the information.

72. As a direct and proximate result of Defendants' misrepresentations and concealments as set forth herein, Plaintiff has been damaged in an undetermined amount not less than $30,000,000.

**THIRD CAUSE OF ACTION**
**Fraudulent Misrepresentation/Fraud in the Inducement**
**Against All Defendants**

73. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

74. Plaintiff brings a claim for fraudulent misrepresentation/fraud in the inducement.

75. As detailed above, Defendants induced Tacora into investing in MRCo, and Tacora was in fact induced and extended $30,000,000 to MRCo.

76. Defendants had affirmative and continuing duties to not make fraudulent misrepresentations of material facts regarding the financial and operational condition of MRCo. As alleged in this Complaint, there is a causal and factual nexus between Plaintiff's damages and Defendants' breach of these duties.

77. Applying Kentucky substantive law, a party claiming harm resulting from fraudulent misrepresentation / fraud in the inducement must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to

13

be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

78. As described more fully above, each of the Defendants jointly determined that they would collectively provide Tacora with inaccurate, false, deceitful, and misleading information regarding MRCo's financial condition, solvency, projections and ability to raise outside equity.

79. Defendants' misrepresentations were made knowing that Tacora would rely on them.

80. These misrepresentations by the Defendants did induce Tacora to commit funds to MRCo in the aggregate amount of $30,000,000 that Tacora would otherwise not have committed had Tacora not been induced to rely on the misrepresentations made by Defendants.

81. Tacora never would have provided MRCo with funding if Tacora had known the true financial and operational condition of MRCo.

82. Defendants' actions were willful, wanton and undertaken with the intent to harm Tacora.

83. Defendants committed malice, oppression, and fraud, and Plaintiff is therefore entitled to recovery of exemplary or punitive damages in a sum according to proof at trial.

84. As a direct and proximate result of Defendants' fraudulent misrepresentations as set forth herein, Plaintiff has been damaged in an undetermined amount not less than $30,000,000.

**WHEREFORE**, Plaintiff Tacora Capital, LP demands judgment against all Defendants jointly and severally as follows:

(a) For general and specific damages according to proof at trial;

(b) For treble damages;

(c) For consequential damages;

14

(d)     For exemplary and punitive damages;

(e)     For attorneys' fees, interest, and costs of suit;

(f)     For such other and further relief as the Court deems just,

proper, and equitable.


Dated: February 18, 2026

Respectfully submitted,

/s/ *Kate A. Dunnington*
Kate A. Dunnington
Kate Dunnington Law, PLLC
PO Box 43548
Louisville, KY 40253
(502) 693-9213
kate@dunnington-law.com
*Co-Counsel for Plaintiff*

**NAGEL RICE, LLP**
/s/ Bruce H. Nagel
Bruce H. Nagel, Esq. (*pro hac vice forthcoming*)
David J. DiSabato, Esq. (*pro hac vice forthcoming*)
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
*Counsel for Plaintiff*